UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MEREDITH SHUMAN CASALE and
DOUGLAS CASALE,

                Plaintiffs,

        v.

ELI LILLY AND COMPANY

                Defendant.

CIVIL ACTION No. 03 CV-11833 (DPW)

## DEFENDANT ELI LILLY AND COMPANY'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Eli Lilly and Company ("Lilly") hereby moves for partial summary judgment under Fed. R. Civ. P. 56. Plaintiffs have not and can not come forward with any evidence that Dr. Herbert Horne, the physician who allegedly prescribed DES for Meredith Casale's mother, read or relied on any warnings or statements made by Lilly in deciding to prescribe DES. This reliance is an indispensable element of each claim in which plaintiffs allege that Lilly's inadequate product literature caused them harm--failure to warn, negligent misrepresentation, and breach of warranty. DES was not a patented drug and had, by the time of prescription here, been "generally recognized as safe" by the FDA for almost 20 years. The sources of information about DES use, then, were widespread and in no sense limited to any literature that Lilly made available to doctors. Indeed, by the time of this prescription, Lilly did not indicate the drug for use during pregnancy, the use at issue here, suggesting that the prescribing doctor here did not rely on Lilly's warnings and indications for use.

Lilly is therefore entitled to partial summary judgment as a matter of law, and the dismissal of all claims based upon an alleged defect in warnings in product literature. Plaintiffs' other allegations, to the extent plaintiffs may wish to pursue them--that Lilly was negligent in the

manufacture and design of DES--are not addressed in this motion.  However, in all past litigation

about DES, the allegations involving a failure to warn were the crux of the trial and it is likely

that claims premised on alleged flaws in design or manufacture will be abandoned or

unsupported.  In further support of its motion, Lilly adopts and incorporates herein its

accompanying Memorandum of Points and Authorities (including Statement of Undisputed

Facts), and the Affidavit of Seth Nesin.

WHEREFORE, Lilly moves for the entry of partial summary judgment.

## REQUEST FOR HEARING

Pursuant to LCvR 7.1(f), Lilly requests a hearing on its Motion for Summary Judgment.


Respectfully submitted,

ELI LILLY AND COMPANY


_____

James J. Dillon
John M. Granberry
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000

Attorneys for Defendant
Eli Lilly and Company

Dated: February 20, 2004

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MEREDITH SHUMAN CASALE and
DOUGLAS CASALE,

                    Plaintiffs,

          v.                                    CIVIL ACTION No. 03 CV-11833 (DPW)

ELI LILLY AND COMPANY

                    Defendant.

**DEFENDANT ELI LILLY AND COMPANY'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I.      INTRODUCTION

Defendant Eli Lilly and Company ("Lilly") submits this Memorandum of Points and

Authorities in Support of Its Motion for Partial Summary Judgment.  Plaintiffs brought this

product liability suit against Lilly in January 2003.  Plaintiff Meredith Casale alleges that she

suffered injuries as a result of *in utero* exposure in Massachusetts to the prescription drug

"DES".  She asserts claims for negligence, strict liability, breach of warranty and negligent

misrepresentation.  Plaintiff Douglas Casale asserts a claim for loss of consortium.  Both

plaintiffs also seek punitive damages.  In all of these claims, Plaintiffs allege that Lilly provided

inadequate warnings and instructions with its brand of the generic drug diethylstilbestrol (a form

of DES), and that this failure in Lilly's written labeling for DES caused injuries for which they

now claim damages.

To demonstrate Lilly's liability based on alleged failings or misstatements in its product

literature, plaintiffs must prove that Lilly's product literature was actually read and relied upon

by Ms. Casale's prescribing physician, Dr. Herbert W. Horne, Jr.[1]  This motion is premised on the failure to present evidence on an essential element of plaintiffs' claims - each of them require proof of reliance on the allegedly faulty warnings, on some misrepresentation, or on some warranty.  Without proving that Dr. Horne actually factored Lilly's warnings and product literature into his treatment decisions, Lilly's warnings are simply irrelevant to this action.

Lilly's product literature in 1969-70 for this prescription drug did not indicate its use during pregnancy.  Dr. Horne, who allegedly prescribed the drug for that purpose in 1969-70, could not have relied upon Lilly's product literature as a basis for that use.  Dr. Horne could have relied simply on his own training and experience in deciding to prescribe the drug.[2]  Regardless of which brand of diethylstilbestrol product was ultimately received by the patient in this case, liability here can only be found on proof that a failure in Lilly's product literature was the specific and proximate cause of Plaintiff's harm - that "but for" Lilly's inadequate warnings to Dr. Horne, the prescription would not have been made to Ms. Casale's mother and Ms. Casale would not have been injured.[3]  Summary judgment should therefore be granted in Lilly's favor because that proof of reliance on Lilly's product literature does not exist.

---

[1] Plaintiff Meredith Casale alleges that Dr. Horne prescribed DES during her mother's pregnancy with her.  *See* Plaintiff Meredith Shuman Casale's Answers to Eli Lilly And Company's First Set of Interrogatories ("Casale Interrog.") No. 8 (Nesin Aff., Ex. 2);  Transcript of Deposition of Florence Shuman ("Shuman Tr.") at 24 (Excerpts attached as Exhibit 3 to Nesin Aff.).

[2] Dr. Horne, now deceased, was the former director of the fertility clinic at Boston Lying-In Hospital and an instructor at Harvard Medical School for over 40 years.  See Tom Long, *Obituary, Dr. Herbert Horne Jr., at age 80; was director of fertility clinic*, BOSTON GLOBE, Sept. 15, 1995 (Excerpt attached as Exhibit 4 to Nesin Aff.).  In a 1985 scholarly article about DES, Dr. Horne stated that he had prescribed DES to at least 770 women during the period between 1952 and 1972, usually adhering to a dosage schedule suggested by Drs. Smith and Smith in a 1948 journal article.  Herbert W. Horne Jr., *Evidence of Improved Pregnancy Outcome With Diethylstilbestrol (DES) Treatment of Women With Previous Pregnancy Failures: A Retrospective Analysis*, 38 J. CHRON. DIS. 873-880 (1985)  (Excerpt attached as Exhibit 5 to Nesin Aff.).  Dr. Horne's article does not indicate that information from Eli Lilly was ever relied upon by Dr. Horne in prescribing DES, rather, his expertise in the fields of obstetrics, gynecology and fertility suggest that he would have relied upon his own expertise when prescribing DES.

[3] Ms. Casale alleges that a Lilly product was prescribed to her mother, and that as a result she sustained injuries.  Lilly does not concede that a Lilly product was ever prescribed to or ingested by plaintiff's mother but, in any event,

The complaint also asserts generally that Lilly was negligent in "manufacturing, testing, selling, promoting, advertising and/or distributing DES."  To the extent that any of those assertions refers to allegations of wrongdoing unrelated to Lilly's product literature, this partial summary judgment motion does not address them.  However, because all of the product liability claims involving DES that have ever been tried have been failure to warn cases, and because Lilly is unaware of any facts that would support a claim of design or manufacturing defect, this partial summary judgment motion will in practice resolve this claim.

## II.    STATEMENT OF UNDISPUTED FACTS[4]

1.      The Complaint was filed by plaintiffs Meredith Shuman Casale and Douglas Casale in January 2003.  Complaint (attached as Exhibit 1 to the Affidavit of Seth Nesin made in support of Defendant Eli Lilly and Company's Motion for Summary Judgment ("Nesin Aff.")).  Discovery in this matter closed on November 21, 2003.

2.      In the Complaint, Ms. Casale alleges that Lilly's failure to warn proximately and in fact caused the injuries for which she is now claiming damages.  Complaint ¶¶ 9 (Count I - Negligence), 13 (Count II - Strict Liability), 15-19 (Count III - Breach of Warranty), 24 (Count IV - Negligent Misrepresentation), 28 (Count VI - Punitive Damages) (Nesin Aff., Ex. 1).

3.      While living in Massachusetts and while pregnant with Ms. Casale, plaintiff's mother, Mrs. Florence Shuman, was allegedly prescribed the generic product "DES" by her physician, Dr. Herbert Horne in 1969 and 1970.  Complaint at ¶ 6-7 (Nesin Aff., Ex. 1); Plaintiff Meredith Shuman Casale's Answers to Defendant's First Set of Interrogatories ("Casale Interrog.") No. 8 (Nesin Aff., Ex. 2).

---

the critical point for liability is whether the prescribing doctor relied on Lilly's warnings and literature in deciding whether to prescribe the generic drug diethylstilbestrol to plaintiff's mother.

4.      Plaintiff's mother also testified at deposition that she relied on the expertise of her treating and prescribing physicians in determining what medications to take during her pregnancies with plaintiffs.  Shuman Tr. at 24 (Nesin Aff., Ex. 3).

5.      Plaintiff's mother gave birth to Ms. Casale at Boston Lying In Hospital in Boston, Massachusetts.  Plaintiff Meredith Casale was born in June, 1970.  Casale Interrog. No. 1 (Nesin Aff., Ex. 2).

6.      Dr. Horne, the physician who allegedly prescribed diethylstilbestrol to Meredith Casale's mother while she was pregnant with plaintiff, is deceased.  Casale Interrog. No. 8 (Nesin Aff., Ex. 2).

7.      Diethylstilbestrol was a prescription drug, available for use only by prescription from a licensed physician.

8.      Plaintiff has provided no medical records, prescription records or other evidence demonstrating that Dr. Horne prescribed Lilly's diethylstilbestrol, as opposed to a generic prescription or a specific prescription for another drug company's brand of diethylstilbestrol.

9.      In 1969-70, the years that Meredith Casale's mother allegedly took diethystilbestrol, at least 60 companies manufactured diethylstilbestrol.  *See American Druggist Blue Book* ("Blue Book"), 1969 and 1970 (excerpts at Ex. 6 to Nesin Aff.); *Drug Topics Red Book* ("Red Book"), 1969 and 1970 (excerpts at Ex. 7 to Nesin Aff.).

10.     DES was a generic drug, never patented, that was never proprietary to any company.  *Sutowski v. Eli Lilly & Co.*, 696 N.E.2d 187, 188 (Ohio 1998) ("Because DES was not patented, some two hundred to three hundred drug companies produced DES in the years it was widely prescribed for use during pregnancy.").

---

[4] Lilly accepts these facts as undisputed for purposes of this summary judgment motion only and reserves the right to contest any of these facts at trial.

11.     Federal Regulations now and in the years of Meredith Casale's mother's pregnancy with her required *all* manufacturers of prescription medications to provide instructions and warnings for physicians on prescription medications that could only be obtained through the order of a licensed medical practitioner.  Federal Food, Drug and Cosmetic Act §§ 502, 503, 21 U.S.C. §§ 352(f), 353 (1938) (excerpts attached as Exhibit 8 to Nesin Aff.); and Food and Drugs, 21 C.F.R. § 1.106 (1970) (excerpt attached as Exhibit 9 to Nesin Aff.).

12.     Plaintiffs have not identified any product literature that Dr. Horne may have consulted or relied upon when he allegedly prescribed diethylstilbestrol to Meredith Casale's mother.

13.     Plaintiffs have provided no evidence demonstrating that Dr. Horne ever read or consulted Lilly's product warnings and literature in determining whether or not to prescribe a medication to Meredith Casale's mother, Florence Shuman.  Dr. Horne was a notable expert in the field of fertility, was the former director of the fertility clinic at Boston Lying-In Hospital and an instructor at Harvard Medical School for over 40 years.  *See* Tom Long, *Obituary, Dr. Herbert Horne Jr., at age 80; was director of fertility clinic*, BOSTON GLOBE, Sept. 15, 1995 (Excerpt attached as Exhibit 4 to Nesin Aff.).  He had great familiarity with DES, and in his own writing indicated that he had prescribed DES to at least 770 women during the period between 1952 and 1972, usually adhering to a dosage schedule suggested by Drs. Smith and Smith in a 1948 journal article.  Herbert W. Horne Jr., *Evidence of Improved Pregnancy Outcome With Diethylstilbestrol (DES) Treatment of Women With Previous Pregnancy Failures: A Retrospective Analysis*, 38 J. CHRON. DIS. 873-880 (1985) (Excerpt attached as Exhibit 5 to Nesin Aff.).  His article does not indicate that information from Eli Lilly was ever relied upon by Dr. Horne in prescribing DES.

14.     At the time of Ms. Casale's mother's pregnancy with her, Lilly's product literature and the listing for Lilly's diethylstilbestrol in the Physician's Desk Reference did not indicate use of the drug during pregnancy.  *See* Lilly's diethylstilbestrol product literature from 1969 and 1970 (copy attached as Exhibit 10 to Nesin Aff.); 1970 entry for Lilly's diethylstilbestrol in the Physician's Desk Reference (copy attached as Exhibit 11 to Nesin Aff.).

## III.    ARGUMENT

### A.    SUMMARY JUDGMENT IS MANDATED FOR A DEFENDANT WHERE THERE IS NO EVIDENCE ON AN ELEMENT ESSENTIAL TO PLAINTIFF'S CLAIMS.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Once the moving party asserts "an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the latter must establish the existence of an issue that is both "genuine" and "material," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A party moving for summary judgment in a case where the opposing party will have the burden of proof at trial is entitled to summary judgment if he negates an essential element of the opponent's case or demonstrates that proof of that element is unlikely to be forthcoming at trial.  "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249-250.

Plaintiffs have the burden of proving a causal connection between an allegedly tortious act of a defendant and their claim of injury.  In this case, plaintiff alleges that warnings by Lilly for its diethylstilbestrol were inadequate and that these inadequate warnings were the cause of their injuries.  In essence, plaintiff asserts that, but for Lilly's inadequate warnings, the

prescription for "DES" would not have been made and the harm would not have occurred.  An essential element of each of these claims, then, is that the prescribing doctor and learned intermediary, Dr. Horne, relied upon Lilly's warnings when he prescribed this drug.  If Dr. Horne did not so rely, Lilly's warnings, adequate or inadequate, are simply beside the point of these claims.[5]  Where the non-moving party bears the burden of proof, it may not defeat summary judgment by relying upon mere allegations or evidence that is "merely colorable" or "not significantly probative."  *Anderson*, 477 U.S. at 249-50.  Rather, the party must produce sufficient evidence to support a jury verdict.  *Id.* at 248.

**B.     THE SUBSTANTIVE LAW OF MASSACHUSETTS CONTROLS PLAINTIFFS' CLAIMS.**

Plaintiff Meredith Casale was born in Massachusetts, the state where her mother lived while pregnant with her, and where her mother allegedly was prescribed and ingested diethylstilbestrol.  Complaint at ¶¶ 6-7, , 47 (Nesin Aff., Ex. 1); Casale Interrog. Nos. 1, 6, 7, and 8 (Nesin Aff., Ex. 2).  Plaintiff has not alleged that the substantive law of any other jurisdiction applies.  Because all of the operative events related to the prescription and use of diethylstilbestrol occurred in this Commonwealth, Massachusetts substantive law applies to Plaintiffs' claims.  *See Cosme v. Whitin Machine Works, Inc.*, 632 N.E.2d 832, 834-35 (Mass. 1994);  *see also Bushkin Associates, Inc., v. Raytheon Company*, 473 N.E.2d 662, 668-69 (Mass. 1985).

---

[5] Lilly does not concede that its product literature concerning diethylstilbestrol was in any way inadequate. However, for purposes of this summary judgment motion only, Lilly focuses on Plaintiff's burden to show that any alleged inadequacy caused Plaintiff's injuries.

C.     **BECAUSE THE SUBJECT MATTER OF THIS CASE IS A PRESCRIPTION
       DRUG, THE LEARNED INTERMEDIARY RULE APPLIES.**

A drug manufacturer's duty to warn runs to the prescribing physician and not to the

ultimate consumer of the product.  *See Garside v. Osco Drug, Inc, 976* F. 2d. 77, 80 (1st Cir.

1992) (applying Massachusetts law).  The prescribing physician is the logical target of a warning

concerning a prescription medication, because only the physician has the scientific acumen

required to comprehend the risks and benefits associated with prescription drugs.  *Id.* (stating that

the physician is in the best position to convey warnings regarding medical products to patients).

A physician serves as a learned intermediary between a drug manufacturer and an ultimate

patient or consumer.  *See id.*  Therefore any duty to warn runs to that physician, and not to the

patient.  *See Knowlton v. Deseret Medical, Inc.,* 930 F.2d 116, 120 n.2 (1st Cir. 1991) ("It is

generally accepted that in a case involving medical products prescribed or used by a physician or

trained medical personnel, the warning runs to the physician not the patient.").

This case, arising from events allegedly occurring in 1969 and 1970, predates any use of

consumer oriented package inserts, which were not required until at least 1976.[6]  Estrogen

Preparations, 41 Fed.  Reg. 47,573, 47,576 (Oct. 29, 1976) (attached as Exhibit 13 to Nesin Aff.).

---

[6] Drugs dispensed by prescription had only limited mandated labeling requirements for the product as sold to consumers - essentially that the pharmacist attach a label with the patient's name, directions for use and cautionary statements, if any, contained in the prescription and dating and dispensing information.  *See* Federal Food, Drug, and Cosmetic Act § 503(b)(2), 21 U.S.C. § 353(b)(2) (1938) (Nesin Aff., Ex. 8).  Effective in 1961, the Food, Drug and Cosmetic Act was amended to require information for the licensed practitioner to be included with the package from which the drug is to be dispensed.  *See* Enforcement of Regulations Drugs and Devices, New Drugs, 25 Fed. Reg. 6985 (July 22, 1960, Proposed Amendments to 21 CFR § 1.106(b)(3) and (4)).  (Nesin Aff., Ex. 12).  The "package inserts" now familiar to consumers came later, in 1976 for estrogens.  Estrogen Preparations, 41 Fed.  Reg. 47,573, 47,576 (Oct. 29, 1976) (attached as Exhibit 13 to Nesin Aff.).  As illustration, the Massachusetts Supreme Judicial Court in 1985 found a duty to warn users of oral contraceptives directly, supplemental to the existing duty to warn the learned intermediary, as the drug was often used for many months in between consultations with doctors.  *See MacDonald v. Ortho Pharm. Corp.*, 475 N.E.2d 65, 69-70 (Mass. 1985) ("The oral contraceptive thus stands apart from other prescription drugs in light of the heightened participation of patients in decisions relating to use of 'the pill'….We conclude that the manufacturer of oral contraceptives is not justified in relying on warnings to the medical profession to satisfy its common law duty to warn, and that the manufacturer's obligation encompasses a duty to warn the ultimate user.").

Plaintiff in this case must be able to demonstrate that Lilly breached a duty by failing to adequately warn Dr. Horne of the risks associated with diethylstilbestrol and, because of that failure, Dr. Horne prescribed diethylstilbestrol.  Without proving that Dr. Horne ever read, viewed or relied on Lilly's product warnings, plaintiff cannot prove that any alleged failure to warn by Lilly caused the injuries that serve as the basis for this action.

**D.    PLAINTIFF'S CLAIM FOR NEGLIGENT FAILURE TO WARN MUST BE DISMISSED BECAUSE SHE CANNOT DEMONSTRATE THAT LILLY'S WARNINGS WERE RELIED UPON BY DR. HORNE.**

In her Complaint, Plaintiff Meredith Casale alleges injuries as a result of Lilly's negligence "in failing to give adequate warning to the medical profession and the public of the [safety] hazards and other dangers of this drug, and of its ineffectiveness in preventing miscarriages."  *See* Complaint ¶ 9 (Nesin Aff., Ex. 1).  This is a claim of failure to warn - the assertion is that Lilly's DES was defective because it lacked adequate warnings.  Plaintiff alleges that Lilly's negligent failure to warn of certain risks associated with diethylstilbestrol caused plaintiff's injuries in this case.

A cause of action for negligent failure to warn requires a plaintiff to prove that a prescription drug manufacturer (1) owed a duty to warn users of potential dangers of a medication, (2) breached that duty by not adequately warning of risks associated with that drug, (3) where such breach in fact caused harm because of a failure to warn, (4) where such breach proximately caused harm because of the failure to warn, and (5) that the failure to warn caused damages.  *See MacDonald v. Ortho Pharm. Corp.*, 475 N.E.2d 65, 70-72 (Mass. 1985) (explaining elements of cause of action for negligent failure to warn).  In the context of prescription drugs, a drug manufacturer's warning is directed at a prescribing physician, not the patient.  *See Osco Drug*, 976 F.2d at 80 (1st Cir. 1992).  Therefore Ms. Casale must prove that Lilly failed to warn Dr. Horne of the risks associated with the product.  *See id.*

Plaintiffs have not produced any evidence that any failure to warn - even if such failure existed - caused any harm in fact or proximately.  An inadequate warning may be the specific or proximate cause of harm only if the failure to warn led to a prescription that would not otherwise have occurred.  Plaintiff has failed to prove that Dr. Horne was even aware that Lilly's warnings existed at the time he allegedly prescribed a Lilly product to Mrs. Shuman.  Without such proof, Ms. Casale cannot then claim that any deficiency in Lilly's warnings or literature was the specific cause of her harm, proximately caused her harm, or that any additional warnings by Lilly would have prevented her injuries. *See Motus v. Pfizer Inc.*, No. 02-55372, slip op. at 1860-61 (9th Cir. Feb. 9, 2004) (attached as Exhibit 14 to Nesin Aff.) ("Because the doctor testified that he did not read the warning label that accompanied Zoloft or rely on the information provided by Pfizer's detail men before prescribing the drug to Mr. Motus, the adequacy of Pfizer's warnings is irrelevant to the disposition of this case.")

1. **The Heeding Presumption Does Not Apply In This Generic Drug Context And Therefore Plaintiff Bears The Burden Of Proving That Dr. Horne Read and Relied On Lilly's Warnings.**

Plaintiffs in products liability cases can, once clear conditions are proved, gain the benefit of a rebuttable "heeding presumption" that an adequate warning would have been considered by the prescribing doctor, would have altered the doctor's prescription decision and, therefore, would have prevented the injury.  The predicate condition for the presumption is that the particular defendant failed to warn the specified physician who wrote the prescription.  This predicate proof establishes the nexus between the defendant's act - the warning - and the prescription that allegedly caused harm.  This link is required because without it, a defendant with no connection to the events at issue might be held liable - a sort of negligent "warning in the air" that caused no harm.

Under Massachusetts law, once a plaintiff establishes that a drug manufacturer failed to adequately warn a physician, the heeding presumption shifts the burden to the defendant to disprove that any additional warning would have prevented a plaintiff's injury. The heeding presumption fills in the gaps in the causal chain after a plaintiff proves that the defendant gave an inadequate warning to the doctor but may be unable to prove that an adequate warning to that doctor would have prevented a plaintiff's injury. *See Osco Drug,* 976 F.2d at 81 (1st Cir. 1992) ("However, where an inadequate warning is given, a rebuttable presumption arises, beneficial to the plaintiff, that the failure to adequately warn was a proximate cause of the plaintiff's ingestion of the drug." (quoting *Seley v. G.D. Searle & Co.,* 423 N.E.2d 831, 838 (Ohio 1981))); *Knowlton*, 930 F.2d at 123 (1st Cir. 1991) ("This [heeding] presumption, absent the production of rebutting evidence by the defendant, is sufficient to satisfy the first branch of plaintiff's proximate cause burden." (quoting *Seley v. G.D. Searle & Co.,* 423 N.E.2d 831, 838 (Ohio 1981))).

This presumption may be rebutted by evidence that the particular prescribing physician would not have changed her prescription decision even if the "adequate" warning had been given. *See Osco Drug,* 976 F.2d at 81 (1st Cir. 1992). The specificity of this rebuttal evidence reinforces the point made here - to merit the benefits of the "heeding presumption" a plaintiff must show at least that the specific prescribing doctor got and relied upon an "inadequate warning." Rebuttal proof that this doctor would not have been influenced by a different warning makes no sense if that doctor never saw or considered the defendant's warning in the first place.

In each of the cases cited above, there was no dispute as to whose warnings were involved. In *Osco Drug*, plaintiffs brought suit for injuries resulting from the ingestion of phenobarbital, manufactured by the McKesson Corporation. *See Osco Drug*, 976 F.2d at 78-79.

In analyzing plaintiffs' failure to warn claims, the Court's inquiry focused only on the adequacy of McKesson's warnings and whether the combination of certain other medications with phenobarbital - amoxicillin and erythromycin - could have caused the claimed injuries (severe burns). In *Knowlton*, plaintiffs sued Deseret Medical, the manufacturer of a catheter and needle that were used during plaintiff's open heart surgery. *See Knowlton,* 930 F.2d at 117. In discussing the inadequate warnings allegations, the Court focused exclusively on the sufficiency of Deseret's warnings regarding "the danger inherent in the use of the catheter and needle" and the propriety of the instructions accompanying those products. *See id.* at 118-19. There was no dispute concerning the source of the warnings and product literature that the plaintiffs alleged were inadequate and caused injury. Finally, in *G.D. Searle,* the case through which the heeding presumption was subsequently applied by Massachusetts courts in *Osco Drug* and *Knowlton*, the Court was charged with examining the adequacy of G.D. Searle's warnings regarding toxemia that accompanied its medication, Ovulen. *See G.D. Searle,* 423 N.E.2d at 834. As with *Osco Drug* and *Knowlton*, the Court in *G.D. Searle* took as a given that the warnings of the defendant were the specific warnings actually viewed by the learned intermediary, and therefore the decision concerned only the adequacy of that defendant's product literature. There was never any argument regarding the origin of the allegedly inadequate warnings, only the adequacy of those warnings.

In each of these heeding presumption cases, there was no dispute raised that the product warnings or literature originated from the defendants named in those cases. Since that company's warnings were implicated in the decision to prescribe or use, it was reasonable to invoke the "heeding presumption" that any alteration in *that specific company's* product literature would have reached that same prescribing doctor, been heeded, and prevented injury.

This presumption does not carry the same logical power with generic, unpatented products because there are many sources of warnings other than the single defendant here.

Diethylstilbestrol was a generic drug and was manufactured by literally scores of companies.  *See McCormack v. Abbott Labs.*, 617 F. Supp. 1521, 1525 (D. Mass. 1985) ("DES was a fungible drug produced by as many as 300 drug companies from a chemically identical formula.");  *Sutowski v. Eli Lilly & Co.*, 696 N.E.2d 187, 188 (Ohio 1998) ("Because DES was not patented, some two hundred to three hundred drug companies produced DES in the years it was widely prescribed for use during pregnancy.");  *Smith v. Eli Lilly & Co.*, 560 N.E.2d 324, 329 (Ill. 1990) (noting that "as many as 300 companies" manufactured DES at some point prior to 1971).  For the years 1969 and 1970 alone, the *American Druggist Blue Book* ("Blue Book") and *Drug Topics Red Book* ("Red Book") entries show that at least 60 companies manufactured DES.  *See* Blue Book, years 1969 and 1970 (Nesin Aff., Ex 6); Red Book, years 1969-70 (Nesin Aff., Ex. 7).

By statute and by Federal Food and Drug Administration regulations, *each* company that manufactured prescription drugs was required to provide its own product literature, including warnings.  Prescription medications that lacked such adequate warnings would be deemed misbranded drugs, and would subject manufacturers to liability.  *See* Federal Food, Drug, and Cosmetic Act, §§ 502, 503, 21 U.S.C. §§ 352, 353 (1938) (Nesin Aff., Ex. 8); Food and Drugs, 21 C.F.R. § 1.106 (1970) (Nesin Aff., Ex. 9).

Further, the use of DES was, by the time of the prescription here, long standing and well established.  Over the quarter century from the first approval of the drug for use in pregnancy, many articles on the subject appeared in peer review journals, texts discussed its use, and standards of practice were established.  To simply presume that Lilly's product literature was

viewed and relied upon by Dr. Horne ignores the facts that existed in 1969 and 1970.  Without

proving that Lilly's warnings - as opposed to those of one of the many other sources where

information about diethylstilbestrol was available - were used by Dr. Horne, plaintiff cannot

show that (1) Lilly failed to adequately warn Dr. Horne, (2) that but for Lilly's warning, Dr.

Horne would not have prescribed diethylstilbestrol, or (3) that any warning by Lilly - adequate or

not - would have changed Dr. Horne's prescription practices.  Lilly's warnings are not the "but

for" cause - the specific, proximate cause - for the injury here without proof that Lilly's warnings

even factored into Dr. Horne's prescription and treatment decisions.  It is rhetoric - not proof - to

presume that Dr. Horne must have read Lilly's warnings.  This causal element is one that

plaintiffs must prove, and this is a burden they have failed to meet.

It is important to note that Lilly's product literature at that time did *not* indicate the use of

diethylstilbestrol to prevent accidents of pregnancy and advised the physician to weigh the risks

and benefits before using diethylstilbestrol in a known pregnancy.  *See* Lilly's diethylstilbestrol

product literature from 1969-70 (copy attached as Exhibit 10 to Nesin Aff.); 1970 entry for

Lilly's diethylstilbestrol in the Physician's Desk Reference (Nesin Aff., Ex. 11).  While the use

of diethylstilbestrol in pregnancy was then approved by the FDA, Lilly was not suggesting its

use in 1969 and 1970.

**E.   PLAINTIFF'S NEGLIGENT MISREPRESENTATION CLAIM MUST BE
      DISMISSED BECAUSE PLAINTIFF CANNOT MEET HER BURDEN OF
      PROVING THAT DR. HORNE DETRIMENTALLY RELIED ON STATEMENTS
      MADE SPECIFICALLY BY LILLY.**

To succeed on a claim of negligent misrepresentation against a manufacturer, a plaintiff

bears the burden of proving that the defendant:  (1) in the course of its business, (2) supplied

false information for the guidance of others (3) in their business transactions, (4) causing and

resulting in pecuniary loss to those others (5) *by their justifiable reliance upon the information*,

and (6) that it failed to exercise reasonable care or competence in obtaining or communicating the information.  *Cummings v. HPG Int'l Inc.*, 244 F. 3d 16, 24 (1st Cir. 2001) (emphasis added) (applying Massachusetts law).

Just as in the claim of inadequate warning, plaintiffs' claim is based on alleged faults in Lilly's writings.  Those writings, directed to prescribing doctors, cannot have caused any harm unless the prescribing doctor saw and relied on them.  Plaintiff has produced no evidence that Dr. Horne ever saw, much less relied on, Lilly's product literature.  Because plaintiff cannot prove that Dr. Horne read and detrimentally relied on warnings provided by Lilly, summary judgment is warranted in Lilly's favor on Plaintiff's claims for negligent misrepresentation.

**F.    PLAINTIFF'S CLAIM FOR BREACH OF WARRANTY MUST BE DISMISSED BECAUSE PLAINTIFF CANNOT PROVE THAT ANY WARRANTY BY LILLY WAS READ OR RELIED UPON BY DR. HORNE.**

Plaintiff Meredith Casale alleges that Lilly breached both implied and express warranties, although she does not make clear which implied warranties were breached.  Although it is not entirely clear what claim is being alleged, it is irrelevant because she cannot prevailing on either a claim of breach of express warranty, a breach of the implied warranty of merchantability, or a breach of the implied warranty of fitness for a particular purpose.

**1    Because There is No Evidence that Dr. Horne Relied Upon Any Express Warranties Made By Lilly, Plaintiffs' Claim For Breach of Express Warranty Must Fail.**

Under Massachusetts law, "an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Mass. Gen. Laws c. 106 § 2-313.  This requires that a plaintiff demonstrate that the targets of the express warranty knew that the warranty existed, read the warranty, and relied on its content.  *See Sprague v. Upjohn*, Civ. A. No. 91-40035-NMG, 1995 WL 376934 at *3 (D. Mass. May 10, 1994) (quoting *Roth v.*

*Ray-Stel's Hair Stylists, Inc.*, 470 N.E.2d 137, 138 (Mass. App. Ct. 1984)).  Therefore, if no

evidence is presented that Dr. Horne knew of and relied on the statements that plaintiff alleges

constitute an express warranty, plaintiff's breach of express warranty claim must fail.

> **2.      Because Claims for Breach of Implied Warranty of Merchantability Are
> Analyzed In Massachusetts Coextensively With Negligent Failure to Warn
> Claims, Plaintiff's Claim Can Not Succeed.**

In Massachusetts, liability for breach of an implied warranty of merchantability is

"intended to be fully as comprehensive as the strict liability theory of recovery that has been

adopted by a great many other jurisdictions."  *Back v. Wickes*, 378 N.E.2d 964, 968-69 (Mass.

1978).[7]  However, Massachusetts law also mandates that a breach of warranty inquiry focused on

warnings accompanying prescription medications be analyzed in negligence.  In *Payton v. Abbott

Labs., et al.*, 437 N.E.2d 171 (Mass. 1982), the Supreme Judicial Court rejected the plaintiff's

theories of alternative and strict liability, noting that "[p]ublic policy favors the development and

marketing of new and more efficacious drugs.  The Restatement (Second) of Torts recognizes

this policy by rejecting strict liability in favor of negligence for drug related injuries."  *Payton*,

437 N.E.2d at 89-90.  Claims of negligent failure to warn and a breach of an implied warranty of

merchantability are treated "as a single claim for failure to warn" purposes.  *See Sprague v.

Upjohn*, Civ. A. No. 91-40035-NMG, 1995 WL 376934 * 3 (D. Mass. May 10, 1994) (quoting

*MacDonald v. Ortho Pharm. Corp.*, 475 N.E.2d 65, 67-68 (Mass. 1985), *cert. denied*, 474 U.S.

920); *see also Sanderson v. Upjohn*, 578 F. Supp. 338 (D. Mass. 1984); *see, e.g., Garside v.

Osco Drug, Inc.*, 976 F.2d 77 (1st Cir. 1992).  In *Hoffman v. Houghton Chemical Corporation*,

---

[7] It is unnecessary to discuss Plaintiff's strict liability claim because, in Massachusetts, breach of warranty law is a
remedy "fully as comprehensive" as the strict liability theory of recovery that has been adopted by other
jurisdictions.  *See Back v. Wickes, ,* 378 N.E.2d 964, 968-69 (Mass. 1978).  Massachusetts employs breach of
warranty theory "in nearly all respects" as equivalent to strict liability in the context of manufacturing and design
defects.  Failure to warn claims based on breach of warranty, however, are analyzed through the negligence
standard.  *See Correia v. Firestone Tire & Rubber Co* ., 446 N.E.2d 1033, 1039 (Mass. 1983);  *see also Payton v.
Abbott Labs., et al.*, 437 N.E.2d 171 (Mass. 1982).

751 N.E.2d 848, 859 (Mass. 2001), the Supreme Judicial Court stated, "[W]e implicitly recognized that negligent failure to warn and failure to warn under breach of warranty are to be judged by the same standard…We expressly recognize that convergence now." *Id.* (internal citations omitted);  *see also Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 923-24 (Mass. 1998).

As the Supreme Judicial Court explained, the Restatement (Third) of Torts: Products Liability § 2(c) (1998) reaffirms this principle by concluding that a product "is defective because of inadequate instructions or warnings when the forseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings…and the omission of the instructions or warnings renders the product not reasonably safe." *Vassallo v. Baxter Healthcare Corp.*, 696 N.E.2d 909, 923 (Mass. 1998); *see also* Restatement (Third) of Torts: Products Liability § 2(c)(1998) §402A, comment m, at 34.

As discussed above in this Memorandum, § III.D, *supra*, a claim of negligent failure to warn demands proof of reliance on "inadequate" warnings.  Plaintiff has not produced any evidence that Dr. Horne read and relied on Lilly's warnings while treating her mother, Olive Mullen, hence plaintiff cannot prove that any alleged deficiency in those warnings proximately caused her harms.  Because breach of warranty of merchantability claims based on a failure to warn are analyzed coextensively with negligent failure to warn claims, plaintiff's claim for breach of the warranty of merchantability based on a failure to warn must be dismissed.  *See* III.F, *supra*.

> **3.** **Because Plaintiff Cannot Prove Reliance By Dr. Horne On Lilly's Skill or Judgment in Treating Her Mother, Plaintiff's Can Not Bring A Claim for Breach of Implied Warranty of Fitness for a Particular Purpose.**

If Plaintiff instead intended to assert a claim for breach of an implied warranty of fitness for a particular purpose because of inadequate warnings, that claim also must fail.  Such a claim

requires the consumer to prove that she relied on the manufacturer's knowledge, skill and judgment in purchasing a product tailored to that consumer's specifications, and that as a result of such reliance the consumer was injured.  *See* Mass. Gen. Laws c. 106 s. 2-315 ("Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the *seller's judgment to select or furnish* suitable goods, there is...an implied warranty that the goods shall be fit for that purpose.") (emphasis added); *see also Johnson v. Brown and Williamson*, 122 F. Supp. 2d 194, 207 (D. Mass. 2000) ("Under M.G.L. c.106, § 2-315, the warranty of fitness for a particular purpose arises when 1) the seller had reason to know of the particular purpose for which the buyer required the goods, 2) the seller had reason to know of the buyer's reliance on the seller's skill or judgment in selecting or furnishing suitable goods, and 3) the buyer relied in fact.").  Here, however, such a warranty was never created by Lilly, as, again, there is no proof that Dr. Horne relied on *Lilly's* warnings, judgment or skill.

Lilly most certainly did make diethylstilbestrol that was accompanied by FDA approved warnings and instructions for use directed to physicians.  The indications for use of this drug, in 1969 and 1970, however, did not include treatment of habitual abortion and prevention of miscarriage, the purposes for which the doctor in this case allegedly prescribed the drug.  *See* Lilly's diethylstilbestrol product literature from 1969 (Nesin Aff., Ex. 10); 1970 entry for Lilly's diethylstilbestrol in the Physician's Desk Reference (Nesin Aff., Ex. 11).

The allegation here is that Meredith Casale's mother was prescribed diethylstilbestrol for use during pregnancy.  There is no evidence whatsoever that Dr. Horne even read Lilly's product literature, and even if he had done so, Lilly's literature did not indicate or encourage using diethylstilbestrol during pregnancy.  Failure to show that Dr. Horne relied on Lilly's skill,

judgment or warnings results in a failure of proof on a claim for breach of warranty for a particular purpose.

## G.   IF MS. CASALE CANNOT RECOVER ON ANY OF HER CLAIMS, MR. CASALE'S CLAIM FOR LOSS OF CONSORTIUM MUST ALSO BE DISMISSED.

Although Massachusetts recognizes loss of consortium as an independent tort, *Olsen v. Bell Labs., Inc.*, 445 N.E.2d 609, 612 (Mass. 1983), such a claim cannot be maintained without proof of a tortious act that caused personal injury to the claimant's spouse. *Sena v. Massachusetts*, 629 N.E.2d 986, 994 (Mass. 1994) ("Although we have determined that a claim for loss of consortium is independent of the spouse's cause of action, we have not repudiated the implicit prerequisite that the injured spouse have a viable claim") (internal citation omitted). *See also Brazinskos v. A.S. Fawcett, Inc.*, 61 N.E.2d 105, 107 (Mass. 1945) ("The plaintiff's husband could not recover for consequential damages if she had no cause of action"); *Pearl v. Wm. Filene's Sons Co.*, 58 N.E.2d 825, 827 (Mass. 1845) (holding that a husband cannot recover for consequential damages arising from his wife's personal injury unless he proves that she had a viable cause of action).[8]

Mr. Casale's loss of consortium claim must therefore fail if his wife, Ms. Casale, cannot establish a viable cause of action for all of the reasons set forth above.

## H.   MASSACHUSETTS DOES NOT AWARD PUNITIVE DAMAGES.

Plaintiffs' claims for punitive damages must be dismissed. In the absence of a statute expressly authorizing punitive damages, Massachusetts courts are not permitted to grant such an award. *See City of Lowell v. Massachusetts Bonding & Ins. Co., et al.*, 47 N.E.2d 265, 271-72

---

[8]     In addition, under Massachusetts law a spouse cannot recover for loss of consortium unless the marital relationship existed at the time the tort was committed. *Feliciano v. Rosemar Silver Co.*, 514 N.E.2d 1095 (1987). Ms. Casale is alleging injuries arising from *in utero* exposure to diethylstilbestrol. Obviously, no marital relationship existed at the time that Ms. Casale alleged she was injured by a Lilly product.

(Mass. 1943) ("The damages awarded under such a rule are punitive.  In this Commonwealth exemplary damages are not allowed unless authorized by statute."); *see also Boott Mills v. Boston & Maine R.R.*, 106 N.E. 680, 683-84 (Mass. 1914); *Ellis v. Brockton Pub. Co.*, 84 N.E. 1018, 1020 (Mass. 1908).  No such statute exists that is applicable to this case, and therefore plaintiff is not entitled to punitive damages.

## IV.    CONCLUSION

For the foregoing reasons, Lilly respectfully requests this Court grant summary judgment in Lilly's favor.  This Memorandum focuses on plaintiff's claims of inadequate warnings and, by doing so, does not concede that any Lilly product was improperly designed or manufactured.  Lilly is entitled to judgment on all claims based upon allegedly inadequate warning, and claims of misrepresentation or breach of warranty premised on such warnings, for the reasons set out in this Memorandum.

**REQUEST FOR HEARING**

Pursuant to LCvR 7.1(f), Lilly requests a hearing on its Motion for Summary Judgment.

Respectfully submitted,

ELI LILLY AND COMPANY

_John M. Granberry_

_____
James J. Dillon
John M. Granberry
Foley Hoag LLP
155 Seaport Boulevard
World Trade Center West
Boston, MA 02210-2600
(617) 832-1000
Attorneys for Defendant
Eli Lilly and Company

Dated: February 20, 2004