UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MEREDITH SHUMAN CASALE and
DOUGLAS CASALE, her husband,             Civil Action No. 03-10833-DPW

       *Plaintiffs*,

v.

ELI LILLY AND COMPANY,
an Indiana corporation,

       *Defendant*.

_____

**PLAINTIFFS' OPPOSITION AND MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT ELI LILLY AND COMPANY'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

Massachusetts law is clear that a plaintiff in a pharmaceutical product liability case is entitled to the presumption that an adequate warning, if given by a manufacturer, will be read and heeded. Where the warning is inadequate or where there is no warning at all, this "heeding" presumption arises to satisfy the Plaintiff's burden of proving that the lack of proper warning was a proximate cause of the ingestion of the drug. The Plaintiff in this DES case, as in any drug product case, is entitled to rely on the heeding presumption to fulfill this causal link. The Defendant may in turn attempt to rebut the presumption, but to do so, the evidence submitted must be clear and unequivocal. Even testimony by the prescribing physician that he would not have followed a warning has been deemed inadequate by

Massachusetts courts. Here, the materials relied upon by the Defendant in its Motion[1] are not only hearsay, but fall woefully short of the standard needed to shift the burden back to the Plaintiffs. Nonetheless, Plaintiffs have come forward with substantial evidence that the prescribing physician, Dr. Herbert Horne, would have heeded proper and adequate warnings by the Defendant, who was by far the major manufacturer and promoter of DES during the 20+ years it was recommended for use in pregnancy. Questions of proximate cause generally present issues for the jury to decide, and since Plaintiffs have raised  the existence of numerous genuine issues of material fact, the Defendant's motion must be denied. Moreover, concerns for judicial efficiency require a denial, since granting the motion would not fully resolve the case.

## II. PLAINTIFFS' OPPOSING STATEMENT OF UNDISPUTED FACTS

Plaintiffs hereby responds to Defendant Eli Lilly and Company's ("Lilly") Statement of Undisputed Facts as set forth in its Motion and lists additional undisputed facts of their own:

1.      Agreed, except that while discovery closed on November 21, 2003, the parties agreed, and the Court allowed, the taking of two additional depositions. Only one was actually taken, and that was the deposition of Robert S. Anderson, R.Ph., taken on January 24, 2004.

2.      Agreed.

---

[1]For the sake of clarity, the Defendant's Motion for Partial Summary Judgment and its Memorandum of Points and Authorities in Support of Its Motion for Partial Summary Judgment will be hereinafter referred to simply as the "Motion".

3.      Agreed, except that Ms. Casale's mother, Florence Shuman, recalls that Dr. Horne used the term "stilbestrol" as opposed to DES. Deposition Transcript of Florence Shuman at 25 (Exhibit 1).

4.      Denied, since there is no such statement by Mrs. Shuman in the attached excerpt of her testimony.

5.      Agreed.

6.      Agreed.

7.      Agreed.

8.      While Plaintiffs agree that they have not provided any documentation or evidence as to what brand of DES Dr. Horne *prescribed*, the deposition testimony of Robert S. Anderson, R.Ph., demonstrates that the Lilly brand of DES would have been *dispensed* to a customer filling a generic prescription for Stilbestrol at Garb Drug in Newton Centre, Massachusetts, where Mrs. Shuman obtained her prescriptions during her pregnancy with Plaintiff.  Deposition Transcript of Robert Anderson at 10 (Exhibit 2). Henry Cemach was another registered pharmacist at Garb who echoed Mr. Anderson's testimony that only the Lilly brand of DES was carried and dispensed by Garb. Statement of Henry Cemach. (Exhibit 3).

9.      Denied, since the Blue Book and Red Book excerpts provided by Lilly as exhibits to its Motion simply indicate that approximately 60 companies may have manufactured, distributed, tableted, repackaged, offered for sale, and/or sold DES across the United States. These documents are hearsay and do not in any way indicate or prove that all of these companies' products were sold, or even available for sale, in the Boston area, or at

Garb Drug in Newton Centre, Massachusetts, where Mrs. Shuman obtained the drug. To the contrary, the testimony of Robert S. Anderson, R.Ph., indicates that Garb Drug carried only the Lilly brand of DES in the 5 milligram dosage size. *See also* the Statement of Harold B. Sparr, R.Ph, M.Ph, M.S., regarding the fact that the Eli Lilly brand was the only brand of DES regularly carried in the majority of Boston area pharmacies. (Exhibit 4).

10.    Plaintiffs can neither agree nor disagree with this statement as it is not supported by any affidavit, and citation to a court opinion is not evidence of the truth of the statement. *See also* Statement of Harold B. Sparr, R.Ph, M.Ph, M.S., *supra*. (Exhibit 4).

11.    Agreed, except that DES manufacturers, led by the Defendant, agreed to uniform labeling and packaging at the time of FDA approval of DES. *See* letter from D.C. Hines, M.D., Eli Lilly and Company to Dr. J.A. Morrell, E.R. Squibb & Sons, dated May 13, 1941. (Exhibit 5).

12.    Deny. Plaintiffs have provided the affidavit of Merle J. Berger, M.D. in which he testifies that it was his belief that Dr. Horne did in fact consult and rely on product literature, contraindications and warnings relating to prescription drugs that he prescribed. Supplemental Statement of Merle J. Berger, M.D. (Exhibit 6). In addition, Dr. Horne himself stated in an acknowledgment following the text of his study that he relied upon both financial and technical assistance from Eli Lilly. *See* Exhibit 7 to Defendant's Motion. Moreover, the Smith & Smith dosage regimen for DES use in pregnancy which Lilly asserts that Dr. Horne did rely on was part of Lilly's PDR product literature for years. *See, e.g.*, 1960 Lilly Physicians' Desk Reference (PDR) entry for its diethylstilbestrol product. (Exhibit 7).

-4-

13.     Deny. Plaintiffs have provided the affidavits of Merle J. Berger, M.D., (Exhibit 6) and Florence Shuman (Exhibit 8) which demonstrate that it is more likely than not that Dr. Horne did in fact consult and rely on product literature, contraindications and warnings relating to prescription drugs that he prescribed. Since Eli Lilly had the only manufacturer's entry for diethylstilbestrol in the Physicians' Desk Reference for many years, it is quite likely that Dr. Horne read the information contained therein. On the other hand, all of the documentation submitted by Lilly is hearsay, unverified by affidavit or corroborated by admissible evidence of any sort and is simply speculation. Moreover, the Horne article attached as  Exhibit 7 to Defendant's Motion clearly states that Dr. Horne relied on Lilly for statistical data and assistance, as well as for funding of his research, all of which certainly raises inferences of an ongoing relationship with Lilly.

14.     Deny, to the extent that there is no specific proof that the revised literature or Physicians' Desk Reference (PDR) listing was in effect or in circulation when Plaintiff's mother became pregnant in October of 1969. While the product literature attached as an exhibit to Lilly's Motion bears a typed date of 9/3/69, this indicates only that the literature may have been revised as of that date. There is no evidence that revised literature was distributed to physicians or pharmacists as of that date, or ever. Additionally, the 1970 PDR bears no specific publication date and no date of submission of individual manufacturers' entries. Nor is there any indication as to when this information was actually available to physicians in general, or to Dr. Horne in particular.  In addition, Lilly's DES product literature was not a one-time publication, but was an aggregate of decades of Lilly's promotion of DES for use in pregnancy. *See, e.g.*, Exhibit 7 and Lilly's *"De Re Medica"*, a

publication it produced and mailed to every physician in America promoting the value of DES in pregnancy.  (Exhibit 9).

15.     Florence Shuman, the Plaintiff's mother would not have ingested DES had she been advised by Dr. Horne or her pharmacist that there was any report or warning of any risk to her baby.  Supplemental Statement of Florence Shuman (Exhibit 8).

16.     Had Lilly issued a warning of risk of injury, Robert Anderson, Plaintiff's mother's pharmacist who filled the Dr. Horne DES prescription with a Lilly product, would have communicated the risk to Plaintiff's mother. Supplemental Statement of Robert S. Anderson, R.Ph., *supra*. (Exhibit 10).

17.     It was the standard of care of OB/GYN physicians in the Boston area, including Dr. Horne, to be aware of the latest warnings, contraindications, and side effects for any drug they prescribed to a patient, which they obtained from the PDRs, manufacturers' product literature, and "Dear Doctor" letters. Supplemental Statement of Merle J. Berger, M.D., *supra*.  (Exhibit No. 6).

18.     Lilly promoted and advertised DES for use in pregnancy for over 20 years as safe, harmless and effective.

19.     Lilly's labeling and advertising to the medical profession, for the twenty years of its promotion of DES in pregnancy, failed to state that DES carried any risk of injury to mother or daughter. Lilly's Diethylstilbestrol in Accidents of Pregnancy brochure. (Exhibit 11).

### III.  PLAINTIFF IS ENTITLED TO THE HEEDING PRESUMPTION

Plaintiff is entitled to the presumption that her mother's doctor, Herbert Horne, would have read and heeded an adequate warning as to the risks of DES if one had been provided by the Defendant. *Garside v. Osco Drug*, 976 F.2d 77 (1st Cir 1992); *Knowlton v. Deseret Medical, Inc.*, 930 F.2d 116 (1st Cir. 1991); *Harlow v. Chin*, 545 N.E.2d 602 (1989). The well-established "heeding" presumption arises once a plaintiff has demonstrated that the defendant manufacturer knew or should have known of the risks of the product but failed to adequately warn the medical profession about the potential for harm. RESTATEMENT (SECOND) OF TORTS, §402A, Comment j (1965); *Osco Drug,* 976 F.2d 77 at 81. The presumption serves as the causal link between the failure to warn and the ingestion of the drug that caused injury. *Knowlton, id.*, at 123*, citing Seley v. G. D. Searle & Co.*, 423 N.E.2d 831, 837 (1981). Thus, once Plaintiff comes forward with evidence that Lilly failed to adequately warn of the risks of DES, it is presumed that Dr. Horne would not have prescribed the DES that caused her injury. Unless the defendant can produce irrefutable evidence rebutting the presumption, plaintiff has carried her initial causation burden. *Knowlton, id.*

Massachusetts first adopted the heeding presumption in *Harlow v. Chin, supra*, but the mechanics of its application were more fully explained in *Knowlton*. The plaintiff in *Knowlton* sued Deseret Medical, the manufacturer of a catheter and needle that malfunctioned during his open heart surgery.  *Id.* at 118. Plaintiff claimed that Deseret should have warned physicians of the risk of injury related to a particular method of use of the product called retrograde threading and that the failure to do so resulted in plaintiff's

injuries. *Id.* Plaintiff presented evidence that Deseret should have known of the risks inherent in retrograde threading and that an explicit warning of those risks should have been given. Deseret acknowledged that it took no steps to warn surgeons that retrograde threading should not be done. *Id.* at 119. The jury found for plaintiff, and defendant moved for judgment n.o.v. on the basis that, even if such a specific warning had been given, it would not have mattered since the plaintiff did not prove that his physician would have followed it. *Id.* at 123. The First Circuit affirmed the trial court's denial of the defendant's motions, stating:

> This, however, is a misdirected line of fire. The presumption is generally accepted in most jurisdictions, including Massachusetts, that if a warning is given, it will be followed. It is difficult to accept that a proper warning would have been deliberately ignored. To do so would amount to malpractice[.]

*Id.*

Explaining the requirement for overcoming the heeding presumption, the court went on to state that:

> [I]t was incumbent on the defendant, not plaintiff, to prove that [plaintiff's physician] would not have followed an adequate warning about the danger inherent in retrograde threading. Deseret failed to do so to the extent necessary to entitle it to a judgment n.o.v.

*Id.* (citations omitted; emphasis added).

This principle of shifting the burden back to the defendant in a failure to warn case was reiterated in *Garside v. Osco Drug, Inc.*, 976 F.2d 77 (1st Cir 1992). *Osco Drug* involved injuries to a child resulting from the reaction of two drugs she was prescribed for an ear infection. The combination of phenobarbital and amoxicillin resulted in the child's suffering toxic epidermal necrolysis (TENS), a condition which caused severe burns to the skin, blindness and hearing loss. McKesson Corporation, the manufacturer of the phenobarbital she ingested, moved for summary judgment on the basis that the prescribing physician would not have warned the patient's mother of the interaction of the drugs, thus constituting an intervening cause of her injuries. *Id.* at 79. In

support of its motion, McKesson submitted an affidavit of the prescribing physician who stated that

he did not discuss with his patients any causative connection between the two drugs and TENS. *Id*.

Plaintiffs responded with an affidavit from their causation expert who stated that McKesson should

have warned physicians of the risks of acquiring TENS from the combined ingestion of the two

drugs. *Id*. at 82. The trial court granted summary judgment on the basis that the prescribing

physician's admission that he would not warn his patients of the possible connection between the

two drugs and TENS was an intervening-superseding cause of the plaintiff's injuries. *Id*. at 79-80.

The First Circuit reversed, holding that the plaintiffs were entitled to a rebuttable presumption that

the doctor would have heeded an adequate warning, since they had shown that the manufacturer had

failed to warn. The court went on to discuss the level of evidence that a defendant must produce in

order to rebut the heeding presumption, stating the requirement that "the [prescribing] physician's

testimony show unequivocally that s/he knew at the relevant time all the information which would

have been included in a proper warning." *Id*. at 82. The court held that the treating physician's

affidavit relied upon by McKesson did not constitute the unequivocal evidence necessary to rebut

the heeding presumption. *Id*. at 82-83.

Here, Plaintiffs' claims center on Lilly's failure to give adequate warnings to the medical

profession of the risks of prescribing DES to pregnant women. For purposes of the summary

judgment motion only, Plaintiffs are entitled to have this Court assume the correctness of their

assertions that Lilly's warnings, if any, were inadequate. *Osco Drug, supra*, at 82, n. 6. Nonetheless,

Plaintiffs have gone further by presenting evidence of the inadequacy of Lilly's product literature.

The Supplemental Statement of Brian Strom, M.D., attached hereto as Exhibit 12, establishes that

Lilly knew or should have known that DES was capable of modifying the sexual development of

test animals and that it posed a  risk of serious injury to the developing fetus of a human mother ingesting DES. It further demonstrates that the medical literature that existed for years prior to the Plaintiff's exposure to DES could have and should have alerted Lilly to the dangers of promoting DES to pregnant women without human testing, and to the need to properly label and warn of potential risks to the fetus.

In addition, the affidavit of Merle Berger, M.D., attached hereto as Exhibit 6, demonstrates that Lilly's revision of its product literature as set forth in the 1970 PDR was entirely inadequate to apprise an obstetrician/gynecologist of the potential dangers of prescribing DES to his or her pregnant patients. Dr. Berger states that it was the standard of care among OB/GYNs in the Boston area at the time of Plaintiff's exposure to DES to be aware of the latest warnings, contraindications, and side effects for any drug prescribed to a patient. It is his informed opinion that Dr. Horne would most certainly have subscribed to and followed this standard of care in his practice and would have heeded any adequate or appropriate warnings given by a drug manufacturer for pharmaceuticals he prescribed. Dr. Berger was a contemporary and colleague of Dr. Horne's-- he knew and worked with him at the Harvard Medical School and collaborated with him on at least one medical study. Dr. Berger's testimony not only establishes the inadequacy of Lilly's so-called warning, but also refutes Lilly's conjecture that Dr. Horne never read or relied upon product literature.

Plaintiff's mother, Florence Shuman, has testified that during the time she was a patient of Dr. Horne's, he would discuss with her the possible benefits, risks, or side effects of all treatment, medications or procedures he provided her. See Shuman Statement at Exhibit 8. She stated that she was sure that he would never have recommended a drug that would have or could have harmed her baby. She recalled that Dr. Horne referred to the pregnancies of his patients as "precious

pregnancies"and she therefore believes that it would have been entirely out of character for him to prescribe a drug that he knew could harm such a pregnancy. Mrs. Shuman further stated that she would never have taken DES if she knew it could have caused damage to her baby, or at the very least, she would have factored this into her decision.

Robert Anderson is a pharmacist who was primarily responsible for the ordering of prescription medications at Garb Drug, the pharmacy where Mrs. Shuman had her DES prescriptions filled. He has testified multiple times that it was Garb's custom and practice to carry only the Lilly brand of DES in 5 mg sizes.[2]

With the statements of Drs. Strom and Berger, Mrs. Shuman and Mr. Anderson, Plaintiffs have not only met, but exceeded, the standards set forth in *Osco Drug* and *Knowlton*, thus entitling them to the presumption that Dr. Horne would have heeded an adequate warning. That presumption in turn satisfies the causal connection between the Defendant's action (or inaction) and Plaintiffs' injuries.

## IV. DEFENDANT'S SUBMISSIONS ARE INADEQUATE TO REBUT THE HEEDING PRESUMPTION

Once Plaintiff gains the benefit of the heeding presumption, the burden shifts to the defendant to rebut it. *Osco Drug*, 976 F.2d 77 at 81. Here, the Defendant's submissions fall far short of the "unequivocal" evidence needed for rebuttal. *Id.* at 82 (citations therein omitted). The attachments to Lilly's Motion are nothing more than an elaborate attempt to turn speculation into fact. Indeed the Motion borders on bad faith, since the case law so clearly defines the burden a

---

[2]Henry Cemach, R.Ph., has also testified that, as a pharmacist at Garb during the years of Plaintiff's exposure, he recalls dispensing only the Lilly brand of DES. *See* Exhibit 3.

-11-

defendant must meet in order to rebut the heeding presumption. An obituary of Dr. Horne, a copy of a study done by him with Lilly funding and technical assistance, and copies of pharmacy pricing lists which bear no relevance to dispensing practices in Boston or in Plaintiff's mother's pharmacy are no evidence whatsoever, let alone the definitive, unambiguous evidence required by the cases. Even in stating its argument, the strongest language that the Defendant can muster is that Dr. Horne "*could have* relied simply on his own training and experience" and that "his expertise in the field...*suggest*[s]" that this alone was the basis of his prescribing decision. *See* Motion at 2.

As the Defendant well knows, even a living, breathing prescribing physician's pre-trial statement that he would not have heeded an adequate warning is insufficient to allow a defendant manufacturer to escape liability. *Osco Drug*; *Knowlton; supra*. While some courts have held that a physician's testimony may sometimes shield a manufacturer, those courts have required that such testimony show unequivocally that the doctor knew at the relevant time all the information which would have been included in a proper warning. *Id.* at 82 (citations omitted). Even then, the court in *Osco Drug* expressed its "grave reservations" about whether the Massachusetts Supreme Judicial Court would actually follow such cases. As the court stated:

> In light of both the presumption afforded a plaintiff under Massachusetts law that a proper warning would be heeded, *see Knowlton*, 930 F.2d at 123; *Harlow*, 545 N.E.2d at 606, and the general rule that questions of intervening causation are better decided by a jury, *Solimene*, 507 N.E.2d at 665, the Massachusetts Supreme Judicial Court would likely be reluctant to allow a physician's pre-trial testimony about what s/he would have done had s/he been warned to insulate a defendant manufacturer from liability. Such reluctance would find support in a line of cases holding that a physician's statement about what s/he would have done in the face of an adequate warning raises a credibility issue which must be decided by a jury. (Additional citations omitted)

*Id.* at 83, n.9.

Lilly has presented no evidence whatsoever that Dr. Horne would have ignored its warning had it given one. Nowhere does it, nor can it, cite a statement from Dr. Horne or anyone else that he would have ignored a warning or that he would have failed to tell Plaintiff's mother of risks. Moreover, even if it could be shown that Dr. Horne was himself somehow negligent in his prescription of DES to Plaintiff's mother, that does not relieve Lilly of liability. *See Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652, 660 (1st Cir. 1981) (*citing McCue v. Norwich Pharmacal Co.*, 453 F.2d 1033, 1035 (1st Cir. 1972)("[a] physician's carelessness, even if it takes an unanticipated form, should not relieve a drug manufacturer of liability if the manufacturer's failure to warn adequately may have contributed to that carelessness").

Lilly cites *Motus v. Pfizer*, No. 02-55372, Slip Op. at 1860-61 (9thCir. Fed. 9, 2004), (Ex. 14 to Lilly Motion) for the proposition that the existence or adequacy of its warning is irrelevant if Plaintiff cannot prove that Dr. Horne relied on it. That is not a fair reading of the *Motus* holding. Indeed, the Defendant's citation of this case is deceptive, since it fails to point out that California does not even recognize the heeding presumption adopted by Massachusetts. A thorough analysis of California law on this subject was conducted by the lower court which concluded:

> At the hearing on this motion, the Court ordered the parties to submit supplemental briefing on the issue whether the California Supreme Court has or would adopt the rebuttable presumption in the prescription drug context. This helpful briefing confirmed the Court's previously-communicated tentative conclusion that the *California Supreme Court has not applied and would not apply the presumption.*

*Motus v. Pfizer*, 196 F. Supp. 2d 984, 992, n.5 (USDC C. D. Cal. 2001)(emphasis supplied).

Thus, Lilly's reliance on the 9th Circuit opinion is completely misplaced in the face of Massachusetts' adoption of the heeding presumption in *Harlow v. Chin, supra*, and its progeny.

Another case that Lilly *fails* to cite, and one in which it filed -- and lost --  a very similar summary judgment motion, is even  more significant to the analysis here.  *Hibbs v. Abbott Labs, et al.,* 814 P.2d 1186 (Wash. Ct. App. 1991), is the only reported decision that addresses the heeding presumption in a DES setting.  In *Hibbs*, the prescribing physican, Dr. Rutherford,  was alive and testified for the Defendant.  Interestingly, Lilly counsel obtained testimony from him that is almost identical to the way it attempts to portray Dr. Horne in this case:

> "Q: [W]hen you would decide to prescribe stilbestrol to a [pregnant] woman, was your decision to order Stilbestrol based upon the work of Smith and Smith, the work of Priscilla White, your residency in Boston, and your experience with the pharmaceutical (sic) here in Washington?
>
> A:  Yes.
>
> Q:  Was it also based on your ongoing review of the medical literature as Editor of the [*Western Journal of Surgery, Obstetrics and Gynecology*]?
> A:  Yes.
>
> Q:  Was it also based upon your contacts and experiences with obstetricians in the area?
>
> A:  Yes.
>
> Q:  Was it based in any way at all upon the promotional literature of any pharmaceutical company?
>
> A:  No. These were based on my observations personally, plus continuing reports in reputable medical journals..."

*Id.* at 1187, n. 3.

The *Hibbs* court rejected the defendants' argument that Dr. Rutherford relied only on his own knowledge and experience in prescribing stilbestrol, stating that:

> Dr. Rutherford's reliance on his own knowledge of DES in deciding to prescribe the drug to Bernadine Raymond has no bearing on *whether he would have heeded warnings, had any been given,* that the drug posed serious risks to the unborn children of pregnant women.

*Id.* at 1189 (emphasis supplied).

The same result obtains under Massachusetts law. Since Plaintiffs here have already demonstrated their right to the benefit of the heeding presumption, it is incumbent upon the Defendant, not Plaintiff, to prove that Dr. Horne would *not* have followed an adequate warning about the dangers of DES. *See Knowlton v. Deseret Medical*, *Inc.*, 930 F.2d 116, 123 (1ˢᵗ Cir. 1991*).*  Yet Lilly has produced absolutely no evidence that Dr. Horne would have ignored adequate warnings about the risks that DES could pose to pregnant women and their babies. The fact of the matter is that the converse is true, as evidenced by the statements of Merle J. Berger, M.D. and Florence Shuman, *supra,* Exhibits 6 and 8.

## V.  THE HEEDING PRESUMPTION IS NOT RESTRICTED TO THE BRAND NAME DRUG CONTEXT

Lilly asserts that the heeding presumption is not available to Plaintiff because DES was a generic drug. However, it does not, and cannot, cite any case law for that position. The heeding presumption has never been restricted to the context of brand name drugs. Besides, DES was not a generic drug as that term has come to be known today. In the 1970 PDR and for many years prior to that, Lilly had the *only* entry for diethylstilbestrol. Theirs was *the* expert source of information and warnings on DES in the one resource that physicians consulted on a regular basis. In addition, as explained in the affidavit of Harold B. Sparr, R.Ph., M.Ph., M.S., at Exhibit 4,  Lilly was considered the specialist in DES as well as the leading pharmaceutical manufacturer in America at that time with top market popularity because of its reputation, quality control, efficiency of inventory and distribution through wholesalers. Lilly was the only major drug house that employed licensed pharmacists as their sales force, and this allowed them to have greater access to pharmacists and pharmacy-stocking practices than any other company.

Lilly was the dominant voice in the promotion of DES from the outset. At the time of FDA approval of the drug in the 1940s, the manufacturers, led by Lilly, agreed to uniform labeling and packaging. *See* letter from D.C. Hines, M.D., Medical Director of Eli Lilly and Company, to Dr. J.A. Morrell, E.R. Squibb & Sons, dated May 13, 1941, at Exhibit 5.

Lilly's interpretation of *Osco Drug, Knowlton* and *Searle* is that those plaintiffs were entitled to the heeding presumption only because "there was no dispute raised that the product warnings or literature originated from the defendants named in those cases." *See* Motion at 12. However, those cases provide no support for that argument, and even if they did, Lilly's Motion does nothing to raise such a dispute since it is based solely on speculation and surmise. The Motion attempts to cast Dr. Horne as some sort of renegade who would have ignored readily available information from the expert on DES – Lilly, the leading manufacturer of the drug. In reality, as set forth in the affidavits of Dr. Berger and Mrs. Shuman, Dr. Horne would have consulted and relied upon the PDR and other common sources of information about the drugs he prescribed to patients.

Acknowledging the weakness of its assertion that Dr. Horne would not have relied on its DES product literature, Lilly then argues that its 1970 PDR entry no longer recommended that DES be used in pregnancy anyway. It is important to note, though, that Lilly abruptly dropped the pregnancy use indication which it had previously recommended for over 20 years. It did not make pregnancy use a *contra*indication, nor did it explain what information prompted the change or do anything to alert the medical community to the change. When a drug has been recommended as safe and effective for pregnancy use for two decades[3], the sudden removal of its primary indication for use without

---

[3]Indeed, Lilly takes great pains to point out that by the time of Plaintiff's exposure, "the use of DES was...long standing and well established." *See* Motion at 13. This is all the more

conspicuous notification is irresponsible.  As Dr. Berger stated, "Dear Doctor" letters or prominent, black-boxed warnings should have been used.


**VI.   SUMMARY JUDGMENT IS NOT APPROPRIATE WHERE GENUINE ISSUES OF MATERIAL FACT EXIST**

Summary judgment is not appropriate here since genuine issues of material fact exist.  *Celotex Corp. v. Catrett*; 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*  477 U.S. 242 (1986). Plaintiffs have come forward with evidence that the Defendant failed to warn of the known and potential dangers of DES usage in pregnancy, entitling them to the presumption that Dr. Horne would have heeded an adequate warning. This evidence alone must defeat Lilly's motion for summary judgment. However, the complexity of this case raises numerous issues of fact that preclude an early disposition of the case and require determination by a jury. *See, e.g., Uloth v. City Tank Corp.*, 1978, 384 N.E.2d 1188 (Mass. 1978); *Brochu v. Ortho Pharmaceutical Corp.*, 642 F.2d 652 (1st Cir. 1981); *Garside v. Osco Drug*, 976 F.2d 77 (1st Cir 1992).

Even if the Court were to somehow find that summary judgment on Plaintiffs' failure to warn claim was appropriate, the case would not be resolved. As Lilly concedes, its Motion is directed at only those claims by Plaintiffs that involve allegations of a failure to warn.  However, Plaintiffs have also brought claims for strict liability, breach of warranty and negligent misrepresentation. At this stage of the proceedings, Plaintiffs are entitled to have the court accept all factual allegations in the complaint as true and draw all reasonable inferences in Plaintiffs' favor. *Garita Hotel Ltd. v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 17 (1st Cir. 1992);  *Johnson v. Brown & Williamson*, 122 F. Supp. 2d 194, 198

---

reason to provide prominent notice of the withdrawal of that "longstanding" indication for use.

(U.S.D.C. Mass. 2000). Thus, Plaintiffs are entitled at a minimum to have the court consider the following statements as true:

DES was an untested, dangerous and defective drug.

Lilly misrepresented DES to the FDA and the medical professions and concealed studies which reflected adversely on the drug's safety and efficacy.

DES would not have been on the market, and would not have been available to be prescribed by Dr. Horne, if Lilly had made full disclosure to the FDA.

Lilly falsely promoted DES as safe and effective for use in pregnancy.

Lilly's testing on humans and animals for safety and efficacy was negligent and below industry standards.

Lilly's post-marketing testing for human and animals for safety and efficacy was negligent and below industry standards.

Lilly failed to evaluate the teratogenicity of DES after the thalidomide crisis demonstrated that drugs taken during pregnancy affected the fetus.

These statements are sufficient to plead causes of action for negligent misrepresentation and breach of warranty. *See, e.g., Cummings v. HPG Int'l Inc.*, 244 F.3d 16 (1st Cir. 2001); *Back v. Wickes*, 378 N.E.2d 964 (Mass. 1978). Thus, even entry of summary judgment in favor of Defendant on Plaintiff's failure to warn claim would not resolve the entire controversy.

## VII. CONCLUSION

Under Massachusetts law, Plaintiffs are entitled to the presumption that Dr. Horne would have read and heeded an adequate warning regarding the hazards of DES, if one had been given by Lilly. Plaintiffs have carried their burden of demonstrating that the Defendant failed to warn of a non-obvious

risk about which it knew or should have known. This gives rise to a duty on the part of Lilly to rebut the heeding presumption, but it has clearly failed to do so. Whether Lilly recommended DES for pregnancy use during the particular year the Plaintiff's mother ingested it, is irrelevant to the Court's determination of the Motion.  For more than twenty years prior to Plaintiff's exposure, Lilly promoted the use of DES as safe and effective for pregnant women.  Had it warned of the risk of cancer, deformity or infertility in the offspring at any time prior to Plaintiff's exposure, the malformation of her reproductive tract and resultant pregnancy loss and infertility would have been avoided. For the reasons set out in this Memorandum, Plaintiffs respectfully request that this Court deny the Defendant's Motion for Partial Summary Judgment and set a firm date for the trial of this matter.

### REQUEST FOR HEARING

Pursuant to LCvR 7.1(f), Plaintiffs request oral argument on this matter.

Respectfully submitted,

PATRICIA MARTIN STANFORD, P.A.


/s/ Patricia Martin Stanford
_____
PATRICIA M. STANFORD, ESQUIRE
3609 Hendricks Avenue
Jacksonville, FL 32207
904-346-4215

And

ROSS ANNENBERG, ESQUIRE
212 Carnegie Row
Norwood, MA 02062
781-278-9975
ATTORNEYS FOR PLAINTIFFS

Dated: March 22, 2004